UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIAN MOYA,<br><br>Plaintiff,<br><br>-against-<br><br>CITY OF NEW YORK, NEW YORK POLICE DEPARTMENT, POLICE OFFICER JOHN DOE 1, POLICE OFFICER JOHN DOE 2 and POLICE OFFICER JOHN DOE 3 (Their True Names And Identities are Presently Unknown) are sued Individually and in their capacity as Police Officers of the New York Police Department; NEW YORK CITY DEPARTMENT OF EDUCATION,<br><br>Defendants. | **COMPLAINT**<br><br>25 Civ.<br><br>**JURY TRIAL** |

This is a civil action for damages under 42 U.S.C. § 1983 and New York state law arising from the false arrest and unlawful imprisonment of Plaintiff JULIAN MOYA, a public school teacher. On December 17, 2024, Plaintiff was arrested at his place of work based on a single, uncorroborated, and false student accusation, publicly paraded in handcuffs, and detained for approximately nine hours before being released with no charges filed.

1. As a direct result of this false arrest, Plaintiff was immediately terminated from his teaching position, placed on a "Do Not Use" list that bars him from public school employment, and suffered severe reputational, emotional, and financial harm. This action seeks to redress the violations of Plaintiff's Fourth and Fourteenth Amendment rights and related state law torts.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred entirely in Brooklyn, New York.

## PARTIES

5. **Plaintiff Julian Moya** is a natural person and a resident of the State of New York. At all relevant times, Plaintiff was employed by Defendant NYCDOE as a substitute teacher. Beginning on or about November 18, 2024, Plaintiff served as a long-term substitute mathematics teacher at Franklin Delano Roosevelt High School ("FDR High School") in Brooklyn, New York.

6. **Defendant City of New York is named herein for the actions of the New York Police Department (NYPD),** which is a municipal entity of the City of New York responsible for law enforcement and police services within the City of New York, including in public schools. The NYPD operates the School Safety Division and employs police officers and School Safety Agents assigned to public schools. The City of New York is named herein as a Defendant for the purpose of Plaintiff's municipal liability claims. At all relevant times, the City of New York, and its NYPD, through its officers and agents, acted under color of state law.

7. **Defendants John Doe 1, John Doe 2, and John Doe 3** are NYPD police officers whose exact names and shield numbers are currently unknown to Plaintiff. The Doe Defendants

participated in the detention, interrogation, and arrest of Plaintiff on December 17, 2024, as described below. At all relevant times, each of the Doe Defendants was acting within the scope of his employment as an officer of the NYPD and under color of state law. They are sued in their individual capacities. Plaintiff will seek leave to amend this Complaint to name these Defendants once their identities are ascertained.

8. Defendant New York City Department of Education ("NYCDOE") is a municipal agency of the City of New York responsible for operating the public school system in New York City, including the hiring and supervision of teachers and the maintenance of school discipline and safety. NYCDOE is a suable entity. At all relevant times, NYCDOE, through its agents and employees, acted under color of state law. NYCDOE was the employer of Plaintiff and it was responsible for the policies and practices under which those events transpired.

**FACTUAL ALLEGATIONS**

9. Plaintiff began working for the NYCDOE as a substitute teacher in November 2024. In mid-November 2024, he was assigned as a long-term substitute math teacher at FDR High School in Brooklyn, under the supervision of the school's administration. Plaintiff taught geometry and other math classes at FDR High School and had no disciplinary issues prior to the events in question.

10. On December 16, 2024, Plaintiff was teaching a geometry class at FDR High School along with a co-teacher, Mr. Jason Cartez. During that class, Plaintiff observed a female student using her cellphone in violation of class rules. Plaintiff repeatedly asked the student to put

her cellphone away. After multiple requests, the student eventually complied and put her phone away, though she appeared visibly frustrated and annoyed at Plaintiff's admonitions.

11. At no point on December 16, 2024, did Plaintiff physically touch, strike, or intentionally make unwanted contact with the female student. The student did not contemporaneously complain to Mr. Cartez (the co-teacher) or to any school official that Plaintiff had harmed or inappropriately touched her. Plaintiff's interactions with the student were limited to verbal requests regarding her cellphone.

12. At approximately 9:30 a.m. on December 17, 2024, Plaintiff was in his classroom at FDR High School teaching a class when a school dean arrived and asked Plaintiff to come with her to the Dean's office. The school dean did not explain why Plaintiff was being taken to her office. Plaintiff complied and accompanied the dean. When Plaintiff entered the Dean's office, he observed that five NYPD officers were present in the office.

13. Three of the officers exited the office to speak privately with the dean in the hallway, while two NYPD officers remained in the office with Plaintiff. The two officers then questioned Plaintiff. They asked Plaintiff a series of questions about the previous day's class, including: (a) whether Plaintiff had a pencil in his hand during class on December 16, 2024; (b) whether Plaintiff had any "issues" with any students in that class; and (c) whether Plaintiff at any point sat down at any of the students' desks in the classroom. The officers repeated some of these questions multiple times, pressing Plaintiff for answers. Plaintiff, who was confused and had not yet been told about the student's accusation, answered the officers' questions truthfully.

14. Plaintiff told the officers, in substance, that as a math teacher he typically did hold a pencil while teaching (for purposes of writing on the board or grading student work). He also explained that the only "issue" he had with a student the day before was having to ask one student to put away a cellphone, but that this matter was resolved when she complied. Plaintiff denied any improper conduct. After a brief period, the three officers who had been speaking with the dean reentered the office. Without providing Plaintiff any further explanation, the officers abruptly instructed Plaintiff to stand up and to place his hands behind his back. The officers then placed Plaintiff in handcuffs and informed him that he was under arrest. This was the first time Plaintiff had ever been placed under arrest or taken into police custody.

15. Plaintiff was not told at that moment the precise reason for his arrest. After handcuffing Plaintiff, the officers escorted him out of the Dean's office and through the school's hallways. This occurred during a class-change period when the hallways were crowded with students and staff. The officers walked Plaintiff, in handcuffs, in full view of the school population. Plaintiff was highly embarrassed and humiliated by being displayed in this manner.

16. Plaintiff was placed in a police vehicle and transported to the NYPD's 66th Precinct station house in Brooklyn. He arrived at the precinct at approximately 10:30 a.m. and was placed in a holding cell. While Plaintiff was in the holding cell, an NYPD officer (upon information and belief, one of the arresting officers) turned off his body-worn camera and stated to Plaintiff, in sum and substance: "This is off the record, but you are being arrested for allegedly poking someone with a pencil." This was the first information Plaintiff received about the nature of the allegations against him. Aside from this comment,

Defendants did not officially inform Plaintiff of any charges or the basis for his arrest at that time.

17. At approximately 6:30 p.m., one of the detectives informed Plaintiff, in substance, that he should "sit tight" because they were going to let him go, stating that "this was all bullshit." Plaintiff was then released from custody and permitted to leave the precinct. In total, Plaintiff had been detained for roughly nine hours (from about 9:30 a.m. to 6:30 p.m.). He was released without any criminal charges.

18. At no point prior to or during Plaintiff's arrest did any Defendant conduct a reasonable investigation into the veracity of the student's accusation. The arresting officers did not interview the co-teacher who was present in the classroom (Mr. Cartez) or any other students or witnesses before placing Plaintiff in custody. The school's administration likewise did not perform any preliminary inquiry (such as questioning Plaintiff or the co-teacher) before facilitating Plaintiff's removal by police. Plaintiff's arrest was effected solely on the basis of a single student's unverified allegation, made approximately a day after the alleged incident, without any corroborating evidence. Defendants failed to take basic, reasonable steps to verify whether the student's claim was credible before arresting and detaining Plaintiff.

19. Even assuming arguendo that the student's allegation (that Plaintiff "poked" her with a pencil) was made, such an allegation did not justify the extreme measure of an arrest without further inquiry. In fact, as the detectives themselves acknowledged by calling the case "bullshit," the allegation was not credible. By arresting Plaintiff with no reliable

evidence of wrongdoing, Defendants violated well-established standards requiring probable cause for an arrest.

20. The consequences of Plaintiff's false arrest were severe and continue to impact him. First, Plaintiff lost a valuable professional opportunity on the very day of the arrest. Plaintiff had been scheduled to interview on December 17, 2024, for a full-time mathematics teaching position at James Madison High School. Plaintiff had been invited to that interview prior to his arrest and believed he had an excellent chance of being offered the job. Because Plaintiff was in police custody on the afternoon of December 17, 2024, he was unable to attend the interview and therefore missed the opportunity to be considered for the full-time teaching position. This caused Plaintiff economic loss as well as reputational harm resulting from him having to explain his sudden inability to attend the interview.

21. The public nature of Plaintiff's arrest also caused lasting reputational and emotional damage. News of the arrest spread among the students and staff at FDR High School. Plaintiff's colleagues and supervisors became aware that he had been arrested at school on suspicion of harming a student. Plaintiff was stigmatized and viewed with suspicion as a result of the false accusation and the arrest. The harm to Plaintiff's personal reputation and professional standing was substantial, and he continues to suffer the effects of having been labeled as a teacher who was arrested for misconduct toward a student.

22. In addition to the immediate fallout at the school, the NYCDOE itself took swift punitive action against Plaintiff because of the arrest. On or about December 18, 2024, the NYCDOE terminated Plaintiff's long-term substitute assignment at FDR High School and placed Plaintiff on the Department's "Do Not Use" list (also known as an ineligible list).

Placement on the "Do Not Use" (DNU) list meant that Plaintiff was barred from being offered any teaching assignments or positions within the New York City public school system unless and until the matter was resolved. This effectively removed Plaintiff from the payroll and from any teaching role. Plaintiff was not afforded any hearing or meaningful opportunity to challenge his inclusion on the DNU list at that time. The NYCDOE's action was taken automatically in response to Plaintiff's arrest, despite the fact that the arrest resulted in no charges.

23. As a result of being placed on the DNU list and the cloud of the unresolved accusation, Plaintiff has been unable to secure employment as a teacher (or in any capacity with the NYCDOE) since the date of his arrest. He remains on the NYCDOE's DNU list to this day. Plaintiff lost his income from the substitute position (approximately $211 per day that he otherwise would have earned), and he has been unable to earn income in his chosen profession of teaching. To date, Plaintiff has not been informed of any final determination of the DOE's "investigation" into the incident, nor given a timeline for when he might be removed from the ineligible list. The indefinite loss of employment has caused Plaintiff significant financial strain and damage to his career.

24. Plaintiff has also suffered significant emotional and psychological harm as a direct result of Defendants' conduct. Being falsely accused and arrested, and having his nascent teaching career derailed, has caused Plaintiff to experience severe emotional distress, including anxiety, depression, insomnia, and humiliation. Plaintiff has required ongoing mental health treatment: he has been seeing a therapist on a weekly basis and has been prescribed anti-anxiety medication to cope with the trauma and stress stemming from the

incident. Plaintiff's relationships and quality of life have also been adversely impacted by the ordeal.

25. Plaintiff has taken steps to seek redress for the harms he suffered. In compliance with New York law, Plaintiff served a Notice of Claim on the City of New York and the NYCDOE on January 31, 2025, detailing the false arrest and related damages. On May 9, 2025, Plaintiff appeared for an examination pursuant to N.Y. General Municipal Law § 50-h, during which he provided sworn testimony about the incident. More than thirty days have elapsed since Plaintiff's Notice of Claim was served, and Defendants have not offered adjustment or payment of his claims. Plaintiff has therefore satisfied all conditions precedent required before bringing the instant lawsuit.

## AS A FIRST CAUSE OF ACTION
## FOR FALSE ARREST/UNREASONABLE SEIZURE
## UNDER FEDERAL LAW 42 U.S.C. § 1983
## AGAINST DEFENDANTS JOHN DOE 1-3

22. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

23. Defendants JOHN DOE 1-3, acting under color of state law, seized and imprisoned Plaintiff without his consent and without probable cause.

24. This violation of Plaintiff's rights under the Fourth and Fourteenth Amendments was the direct and proximate cause of his damages.

**AS A SECOND CAUSE OF ACTION**

**MUNICIPAL LIABILITY**

**UNDER FEDERAL LAW 42 U.S.C. § 1983**

**AGAINST DEFENDANT CITY OF NEW YORK**

25. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
26. The false arrest of Plaintiff was caused by the policies, customs, and/or practices of the NYPD, including but not limited to:

    a. A custom of arresting individuals in school settings based solely on uncorroborated student allegations.

    b. A failure to train officers on the necessity of establishing probable cause through basic investigation before making an arrest.
27. These policies exhibited a deliberate indifference to the constitutional rights of citizens and were the moving force behind the violation of Plaintiff's rights.

**AS A THIRD CAUSE OF ACTION**

**MUNICIPAL LIABILITY**

**UNDER FEDERAL LAW 42 U.S.C. § 1983**

**AGAINST DEFENDANT DEPARTMENT OF EDUCATION**

28. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.
29. The NYCDOE maintained policies, customs, or practices that caused the deprivation of Plaintiff's Fourth and Fourteenth Amendment rights, including his right to procedural due process, including but not limited to:

a. A policy of automatically involving law enforcement and removing teachers upon any student accusation, without any preliminary investigation to establish a reasonable basis or the accusation.

b. A policy of automatically suspending and placing teachers on an ineligible list (DNU), thereby depriving Plaintiff of his property and liberty interest in his continued employment and professional reputation, immediately upon arrest without a pre-deprivation or prompt post-deprivation due process or name-clearing hearing.

30. These policies, customs, and practices exhibited a deliberate indifference to Plaintiff's constitutional rights and were the moving force behind Plaintiff's false arrest, subsequent injuries, and the deprivation of his rights.

**AS A FOURTH CAUSE OF ACTION**

**FOR FALSE ARREST/FALSE IMPRISONMENT**

**UNDER STATE COMMON LAW**

**AGAINST ALL DEFENDANTS**

31. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

32. Defendants intentionally confined Plaintiff without his consent and without legal justification.

33. The arrest and detention of Plaintiff by Defendants JOHN DOE 1-3 was undertaken without probable cause and was therefore unlawful. The Defendant DEPARTMENT OF EDUCATION facilitated and instigated this unlawful confinement by calling in the police and by providing (or at least not correcting) the false accusation that led to Plaintiff's arrest. As a result of Defendants' actions, Plaintiff was confined for approximately nine hours and suffered harm.

34. Defendants JOHN DOE 1-3 are liable for their tortious conduct, and the municipal Defendants are vicariously liable under the doctrine of *respondeat superior*.

**AS A FIFTH CAUSE OF ACTION**

**FOR INTENTIONAL & NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**UNDER STATE COMMON LAW**

**AGAINST ALL DEFENDANTS**

34. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

35. Defendants' conduct was so extreme, outrageous, and negligent as to exceed all bounds of decency.

36. Defendants, acting individually and in concert, had a duty to manage and operate law enforcement insofar as it applies to properties operated by Defendant Department of Education.

37. Upon information and belief, Defendants have a duty to respect Plaintiff's Fourth Amendment rights to freedom from unreasonable search and seizure.

38. Defendants owed a duty to Plaintiff not to falsely accuse him of misconduct, handcuff him and parade him through his workplace in front of students and peers, detain him for hours without cause, and effectively destroy his professional reputation and career prospects.

39. Defendants breached this duty when they falsely accused him of misconduct, handcuffed him and paraded him through his workplace in front of students and peers, detained him for hours without cause, and effectively destroyed his professional reputation and career prospects.

40. As a result of this breach of duty, Plaintiff has suffered severe emotional distress. Accordingly, Defendants are liable to Plaintiff for negligent infliction of emotional distress

under New York law. In addition to compensatory damages for Plaintiff's mental anguish, punitive damages are warranted against the individual actors to punish and deter such egregious abuse of authority.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JULIAN MOYA respectfully requests judgment against all Defendants, jointly and severally, for:

a. Compensatory damages in an amount to be determined at trial for all economic and non-economic losses;

b. Punitive damages against the individual JOHN DOE Defendants;

c. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

d. Pre-judgment and post-judgment interest as allowed by law;

e. Any such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
December 15, 2025

GLASS & HOGROGIAN LLP

By: s/ Bryan Glass
Bryan Glass, Esq.
85 Broad Street, 17th Floor
New York, NY 10007
(212) 537-6859