UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JULIAN MOYA,

Plaintiff,

-against-

CITY OF NEW YORK, NEW YORK POLICE DEPARTMENT, SERGEANT DANIEL LANZA, LIEUTENANT OLSEN HOXHA, OFFICER NYASHA ROMEO, SERGEANT JASON HUI, and OFFICER RICHARD BOTTALICO are sued Individually and in their capacity as Police Officers of the New York Police Department; NEW YORK CITY DEPARTMENT OF EDUCATION; PETER IANNIELLO, Executive Director of Human Resources; MELANIE KATZ, Principal; and ANDREA REPOLE, Assistant Principal,

Defendants.

**AMENDED COMPLAINT**

**1:25-cv-06903 (BMC)**

**JURY TRIAL REQUESTED**

This is a civil action for damages under 42 U.S.C. § 1983 and New York state law arising from the false arrest and unlawful imprisonment of Plaintiff JULIAN MOYA, a public school teacher. On December 17, 2024, Plaintiff was arrested at his place of work based on a single, uncorroborated, and false student accusation, publicly paraded in handcuffs, and detained for approximately nine hours before being released with no charges filed.

1. As a direct result of this false arrest, Plaintiff was immediately terminated from his teaching position, placed on a "Do Not Use" list that bars him from public school employment, and suffered severe reputational, emotional, and financial harm. This action seeks to redress

the violations of Plaintiff's Fourth and Fourteenth Amendment rights and related state law torts.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.
3. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred entirely in Brooklyn, New York.

## PARTIES

4. **Plaintiff Julian Moya** is a natural person and a resident of the State of New York. At all relevant times, Plaintiff was employed by Defendant NYCDOE as a substitute teacher. Beginning on or about November 18, 2024, Plaintiff served as a long-term substitute mathematics teacher at Franklin Delano Roosevelt High School ("FDR High School") in Brooklyn, New York.

5. **Defendant City of New York** is named herein for the actions of the New York Police Department (NYPD) and its officers and detectives, which is a municipal entity of the City of New York responsible for law enforcement and police services within the City of New York, including in public schools. The NYPD operates the School Safety Division and employs police officers and School Safety Agents assigned to public schools. The City of New York is named herein as a Defendant for the purpose of Plaintiff's municipal liability claims. At all relevant times, the City of New York, and its NYPD, through its officers and agents, acted under color of state law.

6. **Defendants Sergeant Daniel Lanza (Tax No. 945900), Lieutenant Olsen Hoxha (Tax No. 949119), Officer Nyasha Romeo (Tax No. 963224), Sergeant Jason Hui (Tax No. 956747), and Officer Richard Bottalico (Tax No. 968285)** are police officers employed by the New York City Police Department. Each of these Defendants participated in the detention, interrogation, and arrest of Plaintiff on December 17, 2024, as described below. At all relevant times, each was acting within the scope of his or her employment and under color of state law. They are sued in their individual capacities.

7. **Defendant Principal Melanie Katz and Assistant Principal Andrea Repole** are administrators who were employed by the New York City Department of Education at the FDR High School in Brooklyn, New York. Defendants participated in the detention, interrogation, and arrest of Plaintiff on December 17, 2024, as described below. At all relevant times, each was acting within the scope of his or her employment and under color of state law. They are sued in their individual capacities.

8. **Defendant New York City Department of Education ("NYCDOE")** is a municipal agency of the City of New York responsible for operating the public school system in New York City, including the hiring and supervision of teachers and the maintenance of school discipline and safety. NYCDOE is a suable entity. At all relevant times, NYCDOE, through its agents and employees, acted under color of state law. NYCDOE was the employer of Plaintiff and it was responsible for the policies and practices under which those events transpired.

9. **Defendant Peter Ianniello, PhD, Executive Director HR School Support Division of Human Resources,** is director of the DOE HR office governing substitute teachers who

work for the DOE, and makes discretionary decisions about placing and keeping substitute teachers on DO NOT USE (DNU) lists regarding their eligibility to serve as per diem substitutes in the DOE, and has made a discretionary decision, on or about October 8, 2025, denying Plaintiff's eligibility to work in the DOE again following the incident at issue herein.

## FACTUAL ALLEGATIONS

10. Plaintiff began working for the NYCDOE as a substitute teacher in November 2024. In mid-November 2024, he was assigned as a long-term substitute math teacher at FDR High School in Brooklyn, under the supervision of the school's administration. Plaintiff taught geometry and other math classes at FDR High School and had no disciplinary issues prior to the events in question.

11. On December 16, 2024, Plaintiff was teaching a geometry class at FDR High School along with a co-teacher, Mr. Jason Cartez. At no point on December 16, 2024, did Plaintiff physically touch, strike, or intentionally make unwanted contact with a female student in the classroom. No students made contemporaneous complaints to Mr. Cartez (the co-teacher) nor to any school official that Plaintiff had harmed or inappropriately touched them.

12. On the morning of December 17, 2024, a female student who had been in Plaintiff's class the previous day arrived at the school with her guardian. The student alleged that she had been poked in the buttocks with a pencil while in Plaintiff's classroom on December 16, 2024.

13. Defendant Andrea Repole reported the student's allegation to the New York City Police Department. Defendant Repole did not attempt to seek further information about this allegation by questioning or speaking to any other individual who had been present in Plaintiff's classroom at the time of the alleged incident, including Plaintiff or Mr. Cartez, at any point prior to contacting the NYPD.

14. At approximately 9:30 a.m. on December 17, 2024, Plaintiff was in his classroom at FDR High School teaching a class when a school dean arrived and asked Plaintiff to come with her to Defendant Repole's office. Defendant Repole did not explain why Plaintiff was being taken to her office. Plaintiff complied and accompanied Defendant Repole. When Plaintiff entered Defendant Repole's office, he observed that five NYPD officers were present in the office. Upon receipt of Defendants' Initial Disclosures, these NYPD officers can now be identified as Defendants Lanza, Hoxha, Romeo, Hui, and Bottalico.

15. Defendants Hoxha, Lanza, and Romeo exited the office to speak privately with Defendant Repole in the hallway, while Defendants Hui and Bottalico remained in the office with Plaintiff to question him. At no point did any officer advise Plaintiff of his *Miranda* rights prior to initiating this custodial interrogation regarding an incident for which he was a suspect. Defendants Hui and Bottalico asked Plaintiff a series of questions about the previous day's class, including: (a) whether Plaintiff had a pencil in his hand during class on December 16, 2024; (b) whether Plaintiff had any "issues" with any students in that class; and (c) whether Plaintiff at any point sat down at any of the students' desks in the classroom. The officers repeated some of these questions multiple times, pressing Plaintiff for answers. Plaintiff, who was confused and had not yet been told about the student's accusation, answered the officers' questions truthfully.

16. Plaintiff told the officers, he did not have a pencil with him during 7th period the day prior. He also explained that the only "issue" he had with a student the day before was having to ask one student to put away a cellphone, but that this matter was resolved when she complied. Plaintiff denied any improper conduct. This incident was irrelevant to the student's allegations, but the Defendant Officers did not redirect Plaintiff to the actual alleged incident of poking, nor did they ask him to explain his side of the story regarding that specific allegation. At no time was Plaintiff made aware that he was a suspect regarding the incident. He was repeatedly told that he was not in trouble while being questioned and that they just wanted his side of the story, without identifying the incident in question.

17. During Defendant Bottalico's questioning of the complaining student, the student admitted that she did not see the individual who poked her, stating she only turned around two minutes after the alleged contact. Furthermore, the student disclosed to the officers that a male student had been seated behind her, alongside Plaintiff, at the time of the alleged incident.

18. During Defendant Bottalico's questioning of Mr. Cartez, Mr. Cartez stated that he did not observe any incident in which Plaintiff poked a female student in the buttocks. Mr. Cartez stated that Plaintiff did not strike him as an individual who would engage in such conduct, and corroborated Plaintiff's account of the events that occurred that day.

19. Although the information obtained during the questioning of both the student and Mr. Cartez cast significant doubt on the credibility of the allegations against Plaintiff, the officers made their decision to arrest Plaintiff on the basis of a single question directed to the complaining student, in which they asked only whether Plaintiff was the individual who

committed the alleged act. The officers failed to ask any follow-up questions to clarify how the student knew Plaintiff committed the act without having seen him do it, how she knew it was a pencil that was used, or how she could be certain it had not been another individual who had committed the act. The officers were aware that arresting Plaintiff would have an adverse effect on his employment and had two choices: they could take the report and return to further investigate, or arrest Plaintiff.

20. After making this decision, the Defendant Officers reentered the office in which Plaintiff was being held. Without providing Plaintiff any further explanation, the officers abruptly instructed Plaintiff to stand up and to place his hands behind his back. The officers then placed Plaintiff in handcuffs and informed him that he was under arrest. This was the first time Plaintiff had ever been placed under arrest or taken into police custody.

21. Plaintiff was not told at that moment the precise reason for his arrest. After handcuffing Plaintiff, the officers escorted him out of Defendant Repole's office and through the school's hallways. The officers walked Plaintiff, in handcuffs, through the school building.. Plaintiff was highly embarrassed and humiliated by being displayed in this manner. At no time was Plaintiff advised of his *Miranda* rights.

22. Plaintiff was placed in a police vehicle and transported to the NYPD's 66th Precinct station house in Brooklyn. He arrived at the precinct at approximately 10:30 a.m. and was placed in a holding cell. While Plaintiff was in the holding cell, an NYPD officer (upon information and belief, one of the arresting officers) turned off his body-worn camera and stated to Plaintiff, in sum and substance: "This is off the record, but you are being arrested for allegedly poking someone with a pencil." This was the first information Plaintiff

received about the nature of the allegations against him. Aside from this comment, Defendants did not officially inform Plaintiff of any charges or the basis for his arrest at that time.

23. At approximately 6:30 p.m., one of the detectives informed Plaintiff, in substance, that he should "sit tight" because they were going to let him go, stating that "this was all bullshit." Plaintiff was then released from custody and permitted to leave the precinct. In total, Plaintiff had been detained for roughly nine hours (from about 9:30 a.m. to 6:30 p.m.). He was released without any criminal charges.

24. At no point prior to or during Plaintiff's arrest did any Defendant conduct a reasonable investigation into the veracity of the student's accusation. Plaintiff's arrest was effected solely on the basis of a single student's unverified allegation, made approximately a day after the alleged incident, without any corroborating evidence, and despite contradictory evidence from the co-teacher and the student's own admission that she did not see the perpetrator. Defendants failed to take basic, reasonable steps to verify whether the student's claim was credible before arresting and detaining Plaintiff.

25. Even assuming *arguendo* that the student's allegation (that Plaintiff "poked" her with a pencil) was made, such an allegation did not justify the extreme measure of an arrest without further inquiry. In fact, as the detectives themselves acknowledged by calling the case "bullshit," the allegation was not credible. By arresting Plaintiff with no reliable evidence of wrongdoing, Defendants violated well-established standards requiring probable cause for an arrest.

26. The consequences of Plaintiff's false arrest were severe and continue to impact him. First, Plaintiff lost a valuable professional opportunity on the very day of the arrest. Plaintiff had been scheduled to interview on December 17, 2024, for a full-time mathematics teaching position at James Madison High School. Plaintiff had been invited to that interview prior to his arrest and believed he had an excellent chance of being offered the job. Because Plaintiff was in police custody on the afternoon of December 17, 2024, he was unable to attend the interview and therefore missed the opportunity to be considered for the full-time teaching position. This caused Plaintiff economic loss as well as reputational harm resulting from him having to explain his sudden inability to attend the interview.

27. The public nature of Plaintiff's arrest also caused lasting reputational and emotional damage. News of the arrest spread among the students and staff at FDR High School. Plaintiff's colleagues and supervisors became aware that he had been arrested at school on suspicion of harming a student. Plaintiff was stigmatized and viewed with suspicion as a result of the false accusation and the arrest. The harm to Plaintiff's personal reputation and professional standing was substantial, and he continues to suffer the effects of having been labeled as a teacher who was arrested for misconduct toward a student.

28. In addition to the immediate fallout at the school, the NYCDOE itself took swift punitive action against Plaintiff because of the arrest. On or about December 18, 2024, via email from Peter Ianniello, NYCDOE terminated Plaintiff's long-term substitute assignment at FDR High School and placed Plaintiff on the Department's "Do Not Use" list (also known as an ineligible list). Placement on the "Do Not Use" (DNU) list meant that Plaintiff was barred from being offered any teaching assignments or positions within the New York City public school system unless and until the matter was resolved. This effectively removed

Plaintiff from the payroll and from any teaching role. Plaintiff was not afforded any hearing or meaningful opportunity to challenge his inclusion on the DNU list at that time. The NYCDOE's action was taken automatically in response to Plaintiff's arrest, despite the fact that the arrest resulted in no charges.

29. On or about October 8, 2025, Mr. Ianniello, Executive Director of HR School Support, denied Plaintiff's request to be removed from the Do Not Use (DNU) substitute list and to restore him to eligibility for substitute teaching service in the NYCDOE public schools.

30. As a result of being placed on the DNU list and the cloud of the unresolved accusation, Plaintiff has been unable to secure employment as a teacher (or in any capacity with the NYCDOE) since the date of his arrest. He remains on the NYCDOE's DNU list to this day. Plaintiff lost his income from the substitute position (approximately $211 per day that he otherwise would have earned), and he has been unable to earn income in his chosen profession of teaching. To date, Plaintiff has not been informed of any final determination of the DOE's "investigation" into the incident, nor given a timeline for when he might be removed from the ineligible list. The indefinite loss of employment has caused Plaintiff significant financial strain and damage to his career.

31. Plaintiff has also suffered significant emotional and psychological harm as a direct result of Defendants' conduct. Being falsely accused and arrested, and having his nascent teaching career derailed, has caused Plaintiff to experience severe emotional distress, including anxiety, depression, insomnia, and humiliation. Plaintiff has required ongoing mental health treatment: he has been seeing a therapist on a weekly basis and has been prescribed anti-anxiety medication to cope with the trauma and stress stemming from the

incident. Plaintiff's relationships and quality of life have also been adversely impacted by the ordeal.

32. Plaintiff has taken steps to seek redress for the harms he suffered. In compliance with New York law, Plaintiff served a Notice of Claim on the City of New York and the NYCDOE on January 31, 2025, detailing the false arrest and related damages. On May 9, 2025, Plaintiff appeared for an examination pursuant to N.Y. General Municipal Law § 50-h, during which he provided sworn testimony about the incident. More than thirty days have elapsed since Plaintiff's Notice of Claim was served, and Defendants have not offered adjustment or payment of his claims. Plaintiff has therefore satisfied all conditions precedent required before bringing the instant lawsuit.

**AS A FIRST CAUSE OF ACTION**

**FOR FALSE ARREST/UNREASONABLE SEIZURE**

**UNDER FEDERAL LAW 42 U.S.C. § 1983**

**AGAINST DEFENDANTS LANZA, HOXHA, ROMEO, HUI, BOTTALICO, KATZ AND REPOLE**

33. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

34. Defendants Lanza, Hoxha, Romeo, Hui, and Bottalico, acting under color of state law, seized and imprisoned Plaintiff without his consent and without probable cause. At the time they did so, the officers had learned that the complaining student did not see who allegedly poked her, that her accusation was based only on the fact that minutes later she looked back while leaving class and saw Plaintiff seated at a desk behind her, that another student had been seated behind her at the relevant time, and that Plaintiff denied having a pen or pencil in his hand during seventh-period math.

35. The officers also learned that Plaintiff's responses concerned a different classroom incident involving a separate student who refused to get off her cellphone and cursed at him, that the complaining student claimed no knowledge of that disturbance although she was seated toward the back of the classroom, and that the co-teacher, Mr. Cartez, corroborated Plaintiff's account, did not observe any poking incident, and stated that such conduct did not sound like something Plaintiff would do. Notwithstanding these materially exculpatory facts, and after first questioning Plaintiff in Defendant Repole's office while telling him he was not in trouble and they only wanted his version of events even though he had been summoned there without explanation and was not advised he was free to leave or decline questioning, Defendants Lanza, Hoxha, Romeo, Hui, and Bottalico arrested Plaintiff without probable cause to believe he committed any offense.

36. This violation of Plaintiff's rights under the Fourth and Fourteenth Amendments was the direct and proximate cause of his damages.

37. Defendants Katz and Repole, acting under color of state law, affirmatively instigated, facilitated, and proximately caused the unlawful seizure and arrest of Plaintiff by by summoning police before conducting even a minimal school-side inquiry, causing Plaintiff to be brought to her office to be questioned by officers without explanation, remaining present for and orchestrating the encounter, telling officers that the complaining student had emailed the co-teacher the prior night that something had happened in class without first confirming with the co-teacher that any such incident was known or corroborated, and providing or failing to correct materially incomplete and misleading information that helped set the arrest in motion.

**AS A SECOND CAUSE OF ACTION**

**MUNICIPAL LIABILITY**

**UNDER FEDERAL LAW 42 U.S.C. § 1983**

**AGAINST DEFENDANT CITY OF NEW YORK**

38. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

39. The false arrest of Plaintiff was caused by the policies, customs, and/or practices of the NYPD, including but not limited to:

    a. custom of arresting individuals in school settings based on student accusations without basic credibility testing or follow-up inquiry, even where the complaining witness admits she did not actually see the alleged perpetrator;

    b. a failure to train officers that probable cause is not established where they possess plainly exculpatory information from the accused and a percipient school witness; and

    c. a failure to train and supervise officers responding to schools to interview readily available witnesses and resolve obvious inconsistencies before making an arrest.

40. These policies, customs, and/or practices exhibited deliberate indifference to the constitutional rights of citizens and were the moving force behind the violation of Plaintiff's rights, as reflected by the officers' decision to arrest Plaintiff despite the victim's inability to identify the perpetrator from firsthand observation, Plaintiff's denial that he had a pencil or pen during seventh period, the existence of another student seated behind the complainant, and the co-teacher's exculpatory account.

**AS A THIRD CAUSE OF ACTION**

**MUNICIPAL LIABILITY**

**UNDER FEDERAL LAW 42 U.S.C. § 1983**

**AGAINST DEFENDANT DEPARTMENT OF EDUCATION**

41. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

42. The NYCDOE maintained policies, customs, or practices that caused the deprivation of Plaintiff's liberty without due process in violation of his Fourth and Fourteenth Amendment rights, including policies governing how administrators respond to accusations of student misconduct against teachers and how the Department places educators on the DNU/ineligible list.

a. A policy or custom of escalating accusations of student misconduct to law enforcement and removing teachers from service before conducting a basic administrative inquiry to determine whether the accusation is supported by available witnesses, school records, or other readily obtainable information, as reflected by Repole's decision to summon police and orchestrate Plaintiff's confrontation with officers without first interviewing Plaintiff or Mr. Cartez and without clarifying the purported email to the co-teacher.

b. A policy or custom of placing teachers on the DNU or ineligible list, thereby labeling them ineligible to work within the New York City public school system because of an accusation of student misconduct, and maintaining that designation without a reasonably prompt and meaningful opportunity to contest the accusation, clear their names, and obtain removal from the list, even where no criminal charges are filed.

43. These policies, customs, and practices exhibited deliberate indifference to Plaintiff's constitutional rights and were the moving force behind Plaintiff's injuries, including the loss of his ability to work within the DOE, the stigma attached to being branded ineligible

because of alleged misconduct toward a student, and the continued deprivation of liberty without a prompt name-clearing process.

**AS A FOURTH CAUSE OF ACTION**

**FOR FALSE ARREST/FALSE IMPRISONMENT**

**UNDER STATE COMMON LAW**

**AGAINST ALL DEFENDANTS**

44. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

45. Defendants intentionally confined Plaintiff without his consent and without legal justification.

46. The arrest and detention of Plaintiff by Defendants Lanza, Hoxha, Romeo, Hui, and Bottalico was undertaken without probable cause and was therefore unlawful. At the time of arrest, these Defendants knew that the complaining student had not seen who allegedly poked her, that her claim was inferential rather than based on direct observation, that another student had been seated behind her, that Plaintiff denied having a pen or pencil during the relevant class period, and that Mr. Cartez did not observe any such incident and corroborated Plaintiff's account of a different classroom disturbance.

47. Defendant Repole facilitated, instigated, and procured Plaintiff's confinement by calling in the police and by setting the arrest in motion without basic inquiry, causing Plaintiff to be brought to her office and questioned, remaining present for and orchestrating the encounter, and providing or failing to correct incomplete and misleading information despite the absence of corroboration from the co-teacher or any other witness. As a result of Defendants' actions, Plaintiff was confined for approximately nine hours and suffered harm. Defendants Lanza, Hoxha, Romeo, Hui, and Bottalico are liable for their tortious

conduct, and the municipal Defendants are vicariously liable under the doctrine of respondeat superior.

**AS A FIFTH CAUSE OF ACTION**

**FOR INTENTIONAL & NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

**UNDER STATE COMMON LAW**

**AGAINST ALL DEFENDANTS**

48. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

49. Defendants' conduct was so extreme, outrageous, and negligent as to exceed all bounds of decency.

50. Defendants, acting individually and in concert, had a duty to refrain from falsely accusing Plaintiff of misconduct, instigating or procuring a police interrogation and arrest without basic due diligence, publicly parading him through his workplace in handcuffs without adequate factual basis, and effectively destroying his professional reputation and career prospects through an uncorroborated accusation.

51. Upon information and belief, Defendants also had a duty to manage and operate school and law-enforcement interactions in a manner that did not unreasonably subject Plaintiff to severe emotional harm, humiliation, and reputational devastation.

52. Defendants breached these duties when Repole and the school administration escalated an uncorroborated accusation to the police, orchestrated Plaintiff's confrontation with officers without first conducting basic inquiry, and failed to clarify the purported student email to the co-teacher, and when Defendants Lanza, Hoxha, Romeo, Hui, and Bottalico arrested Plaintiff despite the absence of reliable identification and despite exculpatory information from Plaintiff and Mr. Cartez.

53. Defendants further breached these duties by handcuffing Plaintiff and escorting him through his workplace in view of staff, detaining him for hours without charges, and causing or contributing to his placement on the DNU list and the destruction of his ability to continue working within the DOE.

54. As a result of this breach of duty, Plaintiff has suffered severe emotional distress, including anxiety, depression, insomnia, humiliation, and ongoing psychological harm requiring therapy and medication. Accordingly, Defendants are liable to Plaintiff for negligent infliction of emotional distress under New York law. In addition to compensatory damages for Plaintiff's mental anguish, punitive damages are warranted against the individual actors to punish and deter such egregious abuse of authority.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff JULIAN MOYA respectfully requests judgment against all Defendants, jointly and severally, for:

a. Compensatory damages in an amount to be determined at trial for all economic and non-economic losses;

b. Punitive damages against the individual Defendants Katz, Repole, Lanza, Hoxha, Romeo, Hui, and Bottalico;

c. Declaratory relief that the acts and omissions complained of herein, including Plaintiff's arrest without probable cause and NYCDOE's placement and maintenance of Plaintiff on the DNU or ineligible list without a reasonably prompt opportunity to contest the accusation and clear his name, violated Plaintiff's rights under the Fourth and Fourteenth Amendments and New York law;

d. Injunctive relief directing NYCDOE to provide Plaintiff a reasonably prompt name-clearing hearing and such further equitable relief as may be necessary to prevent continued maintenance of Plaintiff on the DNU or ineligible list without due process of law;

e. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

f. Pre-judgment and post-judgment interest as allowed by law;

g. Any such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
April 3, 2026

GLASS & HOGROGIAN LLP

By: s/ Bryan Glass

Bryan Glass, Esq.
Attorneys for Plaintiff
85 Broad Street, 18th Floor
New York, NY 10007
(212) 537-6859